UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT

| | | |
|---|---|---|
| In re: | : | |
| Placido Salazar & Maria N. Salazar | : | Case No. 10-10165-TJC |
| Debtors | : | Chapter 13 |
| _____ | | |
| Placido Salazar & Maria N. Salazar | : | |
| Plaintiffs | : | |
| vs. | : | Adv. Proc. No. 10-00101-TJC |
| First Residential Mortgage Services Corp.; | : | |
| Wells Fargo Bank, National Association, as | | |
| Trustee for Certificate holders of Bear Stearns | : | |
| Asset Backed Securities I LLC, Asset Backed | | |
| Certificates, Series 2007-AC2; and | : | |
| EMC Mortgage Corporation | : | |
| Defendants | : | |
| _____ | | |

## SECOND AMENDED COMPLAINT

## I. PRELIMINARY STATEMENT

1.     This Complaint is filed under the Truth in Lending Act, 15 U.S.C. § 1601

(hereinafter called "TILA"), to enforce the Plaintiffs' right to rescind a consumer credit

transaction, to void the Defendants' security interest in the Plaintiffs' home, and to recover

statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations

of TILA and Regulation Z, 12 C.F.R. § 226 (hereinafter called "Regulation Z"). This action is also

filed for actual and statutory damages from Defendant EMC pursuant to 12 U.S.C. §§

2605(e)(1)(A) and 2605(e)(1)(B)(2) and §§ 3500.21(e)(1) and 3500.21(e)(3) of Regulation X. This action also is filed for damages against First Residential for its unfair and deceptive conduct in violation of the Maryland Consumer Protection Act ("MCPA"), section 13-101 *et seq*., Maryland Commercial Law Article. This action also is filed against all defendants to recover damages resulting from defendants' fraud, misrepresentation, and civil conspiracy.

## II. JURISDICTION

2.       On January 5, 2010, Plaintiffs filed a voluntary petition under chapter 13 of the Bankruptcy Code (Title 11, United States Code). Therefore, the Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157, as amended, and the Order of Reference made by the district court for this district (which Order was entered in accordance with the Bankruptcy Amendments and Federal Judgeship Act of 1984). Jurisdiction is further conferred on the Court by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201. The Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. Sections 1334 and 157(b)(2). The Court has jurisdiction to hear the claims for relief under the Real Estate Settlement Procedures Act pursuant to 12 U.S.C. § 2614. The Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. Section 1367.

3.       This matter is a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order.  However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiffs consent to the entry of a final order by the Bankruptcy Judge.

### III.  PARTIES

4.      The Plaintiffs are the Debtors, Placido Salazar ("Placido") and Maria N. Salazar ("Maria") (individually or collectively, "Plaintiffs"). The Plaintiffs own and reside at the real property known as 604 Eldrid Drive, Silver Spring, Maryland (the "Property).

5.       Defendant First Residential Mortgage Services Corporation (hereinafter "First Residential") is a New Jersey corporation engaged in the business of mortgage banking and loan correspondence with a principal place of business located at 570 Sylvan Ave., Englewood Cliffs, NJ 07632-3101. First Residential's Maryland Resident Agent is HSC Agent Services, Inc., 245 West Chase Street, Baltimore, MD 21201. First Residential is identified as the originating lender on Plaintiffs' Deed of Trust encumbering the Property that was recorded January 2, 2007, at Liber 83566, folio 646, among the Land Records of Montgomery County, Maryland (the "Deed of Trust").

6.      a. Defendant assignee Wells Fargo Bank, National Association, as Trustee for Certificate holders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificates, Series 2007-AC2 (hereinafter "Wells Fargo" or the "Trust"), is identified in that certain Deed of Appointment of Substitute Trustee, recorded on the Property October 28, 2009, at Liber 38259, folio 326, among the Land Records of Montgomery County, Maryland, as the owner and holder of the Note secured by the Deed of Trust.

b. On October 28, 2009, Wells Fargo initiated a foreclosure proceeding against Plaintiffs and the Property, allegedly pursuant to the Deed of Trust, in the Circuit Court of Maryland for Montgomery County, Case No. 322440V, and styled as *Jacob Geesing, et al. v.*

*Placido Salazar Claros, et ux.* (The "Foreclosure Case"). A foreclosure sale of the Property was scheduled in the Foreclosure Case for January 6, 2010.

7.     Defendant EMC Mortgage Corporation (hereinafter "EMC") is a Delaware corporation engaged in the business of mortgage lending, securitization, and servicing, with a principal place of business located at 2780 Lake Vista Drive, Lewisville, TX 75067-3884. EMC's Maryland Resident Agent is the Corporation Trust Incorporated, 351 West Camden Street, Baltimore, MD 21201. EMC is identified as the Seller, Master Servicer, and the Company in the Pooling and Servicing Agreement[1] (PSA) which governs the subject Trust, dated as of February 1, 2007 and filed with the Securities and Exchange Commission (SEC).

8.     a. At all times relevant hereto, First Residential, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

b. The roles played by Defendants Wells Fargo (Trustee and Custodian) and EMC (Sponsor and Master Servicer) in the securitization process for the subject loan is set forth in the Transaction Structure diagram found on page 15 of the Prospectus Supplement filed February 27, 2007 with the SEC.[2] EMC is 100% owned by The Bear Stearns Companies LLC, a Delaware LLC. The Bear Stearns Companies LLC is 100% owned by JPMorgan Chase & Co. The Bear Stearns & Company, Inc. was the underwriter.

---

[1] A true and correct copy of the PSA can be found on the SEC's web site at:
http://www.sec.gov/Archives/edgar/data/1388968/000088237707000985/d642573_ex4-1.htm

[2] A true and correct copy of the Prospectus Supplement can be found on the SEC's web site at
http://www.sec.gov/Archives/edgar/data/1388968/000088237707000503/d637429_424b5.htm

## IV.  FACTS

9.      On or about November 20, 2006, Plaintiffs entered into a consumer credit transaction (hereinafter the "transaction") with First Residential in which the extended consumer credit was subject to a finance charge and which was initially payable to First Residential.

10.     Attached as PLAINTIFFS' EXHIBIT A is a true and accurate copy of the credit agreement evidencing the transaction (the "Note").

11.     As part of this consumer credit transaction, First Residential retained a security interest in the Property.

12.     The security interest was not created to finance the acquisition or initial construction of Plaintiffs' home.

13.     Attached as PLAINTIFFS' EXHIBIT B is a true and accurate copy of the mortgage evidencing First Residential's security interest (the "Deed of Trust").

14.     The settlement agent for the transaction was Excellente Settlements, Inc. ("Excellente"). Attached as PLAINTIFFS' EXHIBIT C is a true and accurate copy of the HUD-1 Settlement Statement ("HUD-1") prepared by Excellente and delivered to Plaintiffs on November 20, 2006 when the transaction closed. Excellente's representative stated at the outset of the closing that he was running late and pressed for time, and rushed Plaintiffs through the process of signing the settlement papers.

15.     Attached as PLAINTIFFS' EXHIBIT D is a true and accurate copy of Excellente's Deposit/Check Disbursement Statement for the transaction ("Disbursements").

16.     The HUD-1 inaccurately states that closing took place at Excellente's office at 401 N. Washington Street, Suite 950, Rockville MD 20850. Closing actually took place after 5:00 p.m.

5

at the office of First Residential's loan officer, Victoria Zambrano ("VZ"), located at 8757

Georgia Avenue, Suite 1320, Silver Spring, Maryland (the "Closing").

17.     Plaintiffs were introduced to VZ by the real estate agent that helped them buy the

Property in October 2005, and VZ recommended Excellente's closing services to Plaintiffs.

18.     Plaintiffs do not speak or read English. VZ served as Plaintiffs' interpreter

throughout the transaction. Plaintiffs communicated with First Residential only through VZ.

19.     Placido emigrated to the United States from Bolivia and is a permanent resident

alien of the United States. Placido works as a debris truck driver for E&J Services Inc. of Laurel,

Maryland, a roofing contractor, since at least 2005. Maria works as a cook and housekeeper for

St. Patrick Church in Rockville, Maryland, where she has been employed for the past four years.

Plaintiffs are not well educated and are unsophisticated in business and financial matters.

20.     All of the transaction documents signed by Plaintiffs at closing are in English. The

subject loan is in Placido's name only, but the Deed of Trust was signed by both Plaintiffs since

the Property is owned by Plaintiffs as husband and wife, tenants by the entirety.

21.     The subject loan, which was originated to be securitized, is known as a "stated

income, stated asset" ("SISA") loan, and was underwritten based on Placido's credit score, the

loan to value ratio, and the belief that residential real estate in this country can only go up in

value.

22.     VZ never asked Placido how much income he received. She only asked Placido

for his social security number and his authorization to check his credit report, and she told

Placido that was the only information she needed to qualify him for a loan.

6

23.     VZ prepared the Uniform Residential Loan Application ("Application") that Placido signed at closing, a true and correct copy of which is attached as PLAINTIFFS' EXHIBIT E.

24.      The Application lists Placido's gross monthly income as $9,500 from fence construction self employment, and Maria's income as zero. VZ supplied the income information on the Application, which she got by searching www.salary.com for the average income of a person engaged in fence construction, rather than reporting Plaintiffs' actual income. VZ did not tell Plaintiffs that she falsified their income and occupation on the Application. Placido Salazar did not know when he signed the Application that it incorrectly stated his income and his occupation.

25.     VZ was acting within the scope of her employment, and in the manner she had been taught at First Residential, when she stated Plaintiffs' income on the Application.

26.     First Residential never asked Placido for his tax returns, pay stubs, or any other evidence of his actual income.

27.     The transaction resulted in little or no benefit to Plaintiffs, but cost them $7,443 in closing charges (in the form of equity skimming) that would not have been incurred had the transaction not been consummated, and decreased their debt service by only $61 per month. The interest rate on the first trust that was refinanced was a five-year ARM at a starting rate of 7.375%, a minimum rate of 2.375% and a maximum rate of 12.375% based on 6-month LIBOR index plus 2.25%, with the first change date on November 1, 2010. Had Plaintiffs not refinanced, their interest expense likely would drop significantly in November since LIBOR is currently at 0.39%.

28.     First Residential assigned the obligation in question to Wells Fargo.

## V.  FIRST CAUSE OF ACTION
## VIOLATION OF TRUTH IN LENDING ACT
### (as to Defendants First Residential and Wells Fargo)

29.     Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

30.     First Residential is a creditor within the meaning of § 1602(f) of the Truth in Lending Act (15 U.S.C. §§ 1601 *et seq*., hereinafter "TILA" or the "Act") and Regulation Z, 12 C.F.R. § 226.2(a)(17), and as such was required to provide notices of the right to rescind the transaction and to deliver material disclosures including, but not limited to, the amount financed, finance charge and annual percentage rate to Plaintiffs consistent with the Truth In Lending Act.

31.     Plaintiffs are consumers within the meaning of § 1602(h) of the Act and Regulation Z, § 226.2(a)(11).

32.     This consumer credit transaction was subject to the PLAINTIFFS' right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C. F.R. § 226.23).

33.     In the course of this consumer credit transaction, First Residential violated 15 U.S.C. § 1635(a) and Regulation Z § 226.23(b) by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that clearly and conspicuously disclosed the date the rescission period expired. Instead, the notice incorrectly states the transaction date as October 26, 2006, rather than the actual transaction date of November 20, 2006. This violation was apparent on the face of the disclosure documents assigned.

34.     Attached as PLAINTIFFS' EXHIBIT F is a true and accurate copy of the Notice of Right to Cancel the transaction delivered at Closing to Plaintiffs.

35.     The disclosure statement issued in conjunction with this consumer credit transaction, and attached as PLAINTIFFS' EXHIBIT G, violated the requirements of TILA and Regulation Z in the following and other respects:

a.     By failing to include in the finance charge certain charges imposed by First Residential and payable by Plaintiffs incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z, § 226.4, thus improperly under-disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z, § 226.18(d). Such amounts include, but are not limited to the following charges that are not "bona fide and reasonable," and therefore not properly excluded finance charges:

| HUD-1 LINE | AMOUNT CHARGED | DESCRIPTION | BONA FIDE | NOT BONA FIDE |
|---|---|---|---|---|
| 303 | $      9,015.33 | Cash out | $      8,905.50 | $109.83 |
| 1102 | $         195.00 | Abstract | $         179.00 | $16.00 |
| 1108 | $      1,002.00 | Title Insurance | $         532.50 | $469.50 |
| 1201 | $           60.00 | Releases | $             0.00 | $60.00 |

i.     Actual Disbursements. Excellente's Disbursements (Pls' Ex. D) prove that the actual amount disbursed to Placido Salazar from the transaction loan proceeds was $8,905.50, or $109.83 less than stated on the HUD-1 (Pls' Ex. C), which difference consists of an extra day of interest in the amount of $76.30 (Line 901) and $33.53 in hidden bogus charges. Attached as PLAINTIFFS' EXHIBIT H is a true and correct copy of Excellente's unsigned HUD-1 printed 11/22/2006 showing the $76.30 in additional interest charged Placido Salazar, and First

Residential's unsigned revised notice of right to cancel containing the correct transaction date, neither of which was ever presented to Plaintiffs. This violation was apparent on the face of the disclosure documents assigned. Upon information and belief, the disclosure documents assigned also included a ledger that listed the actual amount disbursed to Plaintiffs at closing. Excellente's Disbursements also prove that the $60 charged for government release recording charges (Line 1201) is bogus, and that the actual amount paid for the title abstract (Line 1102) was $179 rather than the $195 stated on the HUD-1. Plaintiffs were not aware of these bogus charges, nor would a reasonable person have been, until sometime after January 29, 2010, when Excelente produced its transaction file.

        ii.    <u>Title Insurance</u>. Nearly half ($469.50) of the title insurance charges (Line 1108) in this transaction are bogus. Plaintiffs were charged $1,002 for the most expensive lender's title insurance policy possible (the Eagle policy at the original rate), rather than $532.50 for the least expensive lender's title insurance policy possible (standard policy with re-issue rate), in violation of Maryland Insurance Administration's Best Price Rule, which states that

> An individual insurer or insurance group consisting of multiple insurers must always place a consumer in the most favorably priced (least expensive) insurer / tier for which the consumer qualifies.

Attached as PLAINTIFFS' EXHIBIT I is a true and accurate copy of Maryland Insurance Administration's Best Price Rule. Attached as PLAINTIFFS' EXHIBIT J is a true and accurate copy of First American Title Insurance Company's Title Insurance Rates for the State of Maryland applicable on November 20, 2006, the date of the subject transaction.

        (a).    <u>Standard vs. Enhanced Coverage Rate</u>. First Residential's closing instructions required only the less expensive ALTA Title policy, not an expanded or

enhanced policy such as the Eagle policy.  Attached as PLAINTIFFS' EXHIBIT K is a true and accurate copy of First Residential's closing instructions for the transaction.

                (b).    <u>Original vs. Re-Issue Rate</u>.  Plaintiffs purchased an original owners' title insurance policy, insuring their interest in the Property in the amount of $410,000, when they bought the Property on October 17, 2005, thereby qualifying for First American's title insurance re-issue rates in the subject transaction.  Attached as PLAINTIFFS' EXHIBIT L is Plaintiffs' Land America Commonwealth's Owner's Residential Advantage Policy A79-Z005712 dated October 17, 2005. Excellente knew Plaintiffs were qualified for First American's lender's title insurance re-issue rate since Plaintiffs were refinancing two conventional Fannie Mae/Freddie Mac uniform purchase-money deeds of trust on the property dated October 17, 2005, each of which contains the notation at the top of the recorded deed of trust that title was insured by Commonwealth Land Title Ins. Co.  Plaintiffs also obviously qualified for First American's lender's title insurance re-issue rates since Plaintiffs' recorded deed to the property states that title was insured by Commonwealth Land Title Ins. Co.  Attached as PLAINTIFFS' EXHIBIT M is a true and accurate copy of the Plaintiffs' recorded deed, Excellente's land records search results dated 11/06/2006, and the first page and Schedule A of Plaintiffs' two prior recorded deeds of trust on the property that were refinanced in the subject transaction, all produced by Excellente as part of its closing file for the transaction.  Plaintiffs were not aware, nor would a reasonable person have been aware, of these bogus title insurance charges until sometime after July 9, 2009, when they engaged the services of attorney Robert J. Haeger.

              b.       By improperly including certain charges, in the amount financed, which are finance charges, including but not limited to those itemized in Paragraph 35(a) herein, First

11

Residential improperly disclosed the amount financed in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, § 226.18(b); and

c.    By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z, § 226.22, First Residential understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, § 226.18(c).

36.    The disclosures improperly made by First Residential, as itemized in paragraph 35, are material disclosures as defined in the Truth in Lending Act, 15 U.S.C. § 1602(u), Regulation Z, § 226.23 n. 48.

37.    The finance charge and APR were under-disclosed by more than $35, the tolerance levels set forth in 15 U.S.C. §§ 1605(f) and 1635(i).

38.    By reason of those material violations of 15 U.S.C. § 1638, Plaintiffs have a right of rescission for three years from the date of consummation of the loan pursuant to 15 U.S.C. § 1635(f).

39.    On November 19, 2009, Plaintiffs rescinded the transaction by sending a notice of rescission to Defendants, by fax where indicated, and by regular U.S. Mail, or certified U.S. Mail as indicated, return receipt requested, postage prepaid, as follows:

**Certified - Return Receipt Requested**
William F. Aldinger III, President
Wells Fargo Bank, National Association, as
Trustee for Certificate holders of Bear
Stearns Asset Backed Securities I LLC,
Asset Backed Certificates, Series 2007-AC2
299 South Main Street
Salt Lake City, UT 84111-1901

Wells Fargo Bank, National Association
c/o EMC Mortgage Corporation, Agent
909 Hidden Ridge #200
Irving, TX 75038

Wells Fargo Bank, National Association
c/o EMC Mortgage Corporation
2780 Lake Vista Drive
Lewisville, TX 75067-3884

First Residential Mortgage Services Corp.
570 Sylvan Avenue
Englewood Cliffs. NJ 07632
by US Mail and **Fax: 201-758-2800**

William F. Aldinger III, President
Wells Fargo Bank, National Association, as
Trustee for Certificate holders of Bear
Stearns Asset Backed Securities I LLC,
Asset Backed Certificates, Series 2007-AC2
Attn: BK Department, 1 Home Campus
P.O. Box 10335
Des Moines, IA 50328

Wells Fargo Bank, National Association, as
Trustee for Certificate holders of Bear
Stearns Asset Backed Securities I LLC,
Asset Backed Certificates, Series 2007-AC2
c/o Jacob Geesing, Esquire
Bierman, Geesing & Ward, LLC
4520 East West Highway, Suite 200
Bethesda, MD 20814
by US Mail and **Fax: 301-961-6545**

40.     Attached as PLAINTIFFS' EXHIBIT N is a true and accurate copy of Plaintiffs'

notice of rescission with the Broadcast Report evidencing fax transmission of the notice on

November 19, 2009 ("Rescission Notice"). Attached as PLAINTIFFS' EXHIBIT O is a true and

accurate copy of U.S. Postal Service Certified Mail Receipt postmarked 11/19/2009 for Article

Number 7005 1820 0007 9088 0063. Attached as PLAINTIFFS' EXHIBIT P is a true and accurate

copy of U.S. Postal Service Domestic Return Receipt evidencing delivery to Wells Fargo of

Article Number 7005 1820 0007 9088 0063. Article Number 7005 1820 0007 9088 0063 was an

envelope which contained  Plaintiffs' Rescission Notice.

41.     Defendants First Residential and Wells Fargo received copies of the Plaintiffs'

notice of rescission on or about November 19, 2006.

42.     More than 20 calendar days have passed since the Defendants received copies of

the Plaintiffs' notice of rescission.

13

43.     The Defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, including the security interest described in Paragraph 8, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2). Defendant Wells Fargo refused to honor the rescission by its agent's (EMC Mortgage Corp.) December 29, 2009 letter to Plaintiffs' counsel, Robert J. Haeger, a true and correct copy of which is attached as PLAINTIFFS' EXHIBIT Q.

44.     The Defendants have failed to return to Plaintiffs any money or property given by the Plaintiffs to anyone, including the Defendants, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).

45.     As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants are liable to Plaintiffs for:

a.      Rescission of this transaction.

b.      Termination of any security interest in Plaintiffs' property created under the transaction.

c.      Return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with this transaction.

d.      Statutory damages of $2,000 for the disclosure violations.

e.      Statutory damages of $2,000 for Defendants' failure to respond properly to Plaintiffs' rescission notice.

f.      Forfeiture of return of loan proceeds.

g.      Actual damages in an amount to be determined at trial.

h.      Reasonable attorney's fees.

14

i.      Reduce Wells Fargo's claim by way of recoupment to the extent Plaintiffs'

claims are otherwise barred by a limitations or other defense.

## VI.  SECOND CAUSE OF ACTION
## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT
### (as to Defendant EMC)

46.    The preceding allegations of this complaint are re-alleged and incorporated herein

by this reference.

47.    Defendant EMC is the servicer of a "federally related mortgage loan" as that term

is defined in 12 U.S.C. § 2602(1). On November 19, 2009, Plaintiffs, though their attorney, sent

Defendants Wells Fargo and EMC a ''qualified written request'' (QWR) as that term is defined

under RESPA, 12 U.S.C. § 2605(e)(1)(B), and asked Defendants Wells Fargo and EMC to

provide them with information necessary to calculate the rescission tender amount under TILA,

as follows:

> Please provide me with an itemization of the loan disbursements, the loan charges, the
> current principal balance, and all payments received from my client, so that we may
> determine the exact amount needed for tender.

PLAINTIFFS' EXHIBIT N.

48.    Defendant EMC sent Plaintiffs a response dated December 11, 2009

acknowledging receipt of Plaintiffs' QWR. Thereafter, EMC sent Plaintiffs a letter dated

December 29, 2009, rejecting Plaintiffs' rescission demand and failed to provide the information

requested in Plaintiffs' QWR. EMC has failed to provide the information requested in Plaintiffs'

QWR.

49.     Defendant EMC violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide the Plaintiff with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 60 days after receipt of the Plaintiff's qualified written request.

50.     The Defendant has failed to comply with Section 2605 of Title 12 of the United States Code.

51.     Defendant EMC has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

52.     Pursuant to 12 U.S.C. § 2605(f) and § 3500.21(f) of Reg. X, the Plaintiffs may recover of the Defendant EMC actual damages, costs and reasonable attorney fees for each failure of the Defendant to comply with any part of 12 U.S.C. § 2605.

**VII.  THIRD CAUSE OF ACTION**
**VIOLATION OF MARYLAND CONSUMER PROTECTION ACT**
**(as to all Defendants)**

53.     The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

54.     Defendants conduct was unfair and deceptive and violated the Maryland Consumer Protection Act ("MCPA"), section 13-101 *et seq*., Maryland Commercial Law Article, by intentionally mis-stating Plaintiffs' income and occupation on their mortgage Application (PLAINTIFFS' EXHIBIT E).  As a proximate result of the Defendants' violations of the MCPA, Plaintiffs have suffered damages, including emotional distress and mental anguish, and incurred legal fees.

54B.     Wells Fargo knew or should have known that First Residential was regularly

16

falsifying the income stated on loans it sold to Wells Fargo, since this was a loan sold into a securitized trust designed and sponsored by The Bear Stearns Companies ("Bear Stearns") that is rife with such stated income fraud, and it is common knowledge that there was a pervasive industry pattern and practice of such stated income fraud in the origination of subprime mortgage loans like Plaintiffs' loan. *See, e.g.,* FIRST CONSOLIDATED AMENDED SECURITIES CLASS ACTION COMPLAINT,[3] ¶¶ 10-13, *New Jersey Carpenters Health Fund v. Bear Stearns Mortgage Funding Trust*, 1:08-cv-08093-LTS, United States District Court Southern District of New York; CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS,[4] 1, ¶¶ 53-60, *IN RE BEAR STEARNS COMPANIES ERISA LITIGATION*, Master File No.: 08 MDL No. 1963 (RWS), United States District Court Southern District of New York. Defendants knew or should have known that Plaintiffs would rely on First Residential's approval of Plaintiffs' loan application as proof they could afford the subject loan. Wells Fargo was instrumental in providing the funding that enabled First Residential to deceive Plaintiffs into believing they could afford the subject loan.

## VIII.  FOURTH CAUSE OF ACTION
### FRAUD
### (as to all Defendants)

55.     The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

---

[3] A copy can be downloaded from the court at https://ecf.nysd.uscourts.gov/doc1/12706341165. A true bookmarked copy can be downloaded from Plaintiffs' counsel at
http://web3.customwebexpress.com/haegerlaw/UserFiles/File/First%20Am%20Class%20Action%20Complaint.pdf

[4] A copy can be downloaded from the court at https://ecf.nysd.uscourts.gov/doc1/12706161876;
a true bookmarked copy can be downloaded from Plaintiffs' counsel at
http://web3.customwebexpress.com/haegerlaw/UserFiles/File/CONSOLIDATED%20CLASS%20ACTION%20COMPLAINT.pdf

56.     Defendants misrepresented material information regarding the mortgage transaction, including but not limited to inflating Placido's income to qualify him for a loan that he could not afford, and telling him that all they needed to qualify him for a loan was his credit score and social security number.

57.     Defendants knew that the representations were false, or acted with reckless disregard to the truth.

58.     Defendants made these material misrepresentations to Plaintiffs with the intent that Plaintiff rely upon them.

59.     Plaintiffs acted in reliance upon the material misrepresentations.

60.     As a direct and proximate result of the material misrepresentations, Plaintiffs suffered damages including but not limited to increased finance charges, excessive loan expenses and interest rates, loss of other credit opportunities, damage to their credit rating, and other costs.

## IX.  FIFTH CAUSE OF ACTION
## MISREPRESENTATION
### (as to all Defendants)

61.     The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

62.     Defendants made a representation of one or more material facts, including but not limited to inflating Placido's income to qualify him for a loan that he could not afford, and telling him that all they needed to qualify him for a loan was his credit score and social security number.

63.     The representations were false when they were made.

64.     Defendants knew the representations were false when they made it or made the representations recklessly without knowing whether the representations were true.

65.     The Defendants made the representations with the intent that plaintiffs rely on them and so that Defendants would profit from the transaction.

66.     Plaintiffs did rely on the representations.

67.     Plaintiffs were damaged as a result of their reasonable reliance on the representations including but not limited to increased finance charges, excessive loan expenses and interest rates, loss of other credit opportunities, damage to their credit rating, and other costs.

## X.  SIXTH CAUSE OF ACTION
### CIVIL CONSPIRACY
**(as to all Defendants)**

68.     The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

69.     Defendants acted in concert pursuant to a common design to and plan to induce plaintiffs to enter into this mortgage transaction which had little or no benefit to them, including but not limited to providing the funding for the scheme.

70.     Defendants illegally, maliciously and wrongfully conspired with one another with the intent to and with the purpose of inducing Plaintiffs to enter into this mortgage transaction which had little or no benefit to them.

71.     The civil conspiracy resulted in damaging the plaintiffs including but not limited to increased finance charges, excessive loan expenses and interest rates, loss of other credit opportunities, damage to their credit rating, and other costs.

## XI.  SEVENTH CAUSE OF ACTION
## OBJECTION TO CLAIM
### (as to all Defendants)

72.     The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

73.     On or about March 25, 2010, Wells Fargo filed a proof of claim herein against Plaintiffs in the amount of $382,820.09. *See* Claim No. 13.

74.     In its proof Wells Fargo claimed to be secured for the entire amount of its claim by an interest in the Property.

75.     Wells Fargo's claim against the Plaintiffs is not secured as the Plaintiffs' exercise of their right of rescission rendered void any security interest Defendants might have had in the Property.

76.     Wells Fargo's claim is excessive and can not be allowed for the following reasons:

a.     After rescission, the Plaintiffs are liable at most for the principal amount of the rescinded loan exclusive of finance charges, insurance charges and all other charges, 12 C. F. R. § 226.23, 11 U.S.C. § 502(b)(1);

b.       Plaintiffs also have recoupment rights that reduce Wells Fargo's claim to the extent Plaintiffs' claims in this complaint are otherwise barred by a limitations statute or other defense.

**WHEREFORE**, the Plaintiffs having set forth their claims for relief against the Defendants respectfully pray of the Court as follows:

A.       That the Plaintiffs have and recover against the Defendants, jointly and severally, a sum to be determined by the Court in the form of actual damages;

B.       That the Plaintiff have and recover against the Defendants, jointly and severally, a sum to be determined by the Court in the form of statutory damages;

C.       That the Plaintiff have and recover against the Defendants, jointly and severally, a sum to be determined by the Court in the form of punitive damages;

D.       That the Plaintiff have and recover against the Defendants, jointly and severally, all reasonable legal fees and expenses incurred by her attorney;

E.       That this Court order Defendants, jointly and severally, to pay additional actual damages in a sum to be determined by the Court for violation of the Maryland Consumer Protection Act;

F.       That the Plaintiffs have such other and further relief as the Court may deem just and proper;

G       That this Court order the Defendant EMC to pay to the Plaintiffs their attorney's fees and costs and additional actual damages a sum to be determined by the Court for each failure to comply with any part of Section 2605 of Title 12 of the United

States Code pursuant to Section 2605(f) of Title 12 of the United States Code and

Section 3500.21(f) of Reg. X;

H.   The security interest in the Property be declared void;

I.   Defendants' claim be classified as wholly unsecured;

J.   Defendants' claim be reduced by all finance charges, insurance charges and all

other charges as required by 12 C. F.R. § 226.23;

K.   Plaintiffs be awarded all actual and statutory damages under TILA, §§ 1635 and

1640, for Defendant First Residential's initial disclosure violations and for its, and

its assignee's failure to honor Plaintiffs' rescission;

L.   the Claim be reduced by all actual and statutory damages that are awarded to

Plaintiffs by way of recoupment or otherwise; and

M.   the Court order such additional relief as is necessary in the interest of justice.

Respectfully submitted,
*/s/ Robert J. Haeger, August 2, 2010*
Robert J. Haeger, Md. Fed. Bar No. 25434
Attorney for Plaintiffs
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520
www.haegerlaw.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically on all parties by the
CM/ECF system.

*/s/ Robert J. Haeger, August 2, 2010*
Robert J. Haeger

22