Date signed March 29, 2011



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In Re: | * | |
| Placido Salazar and | * | Case No.    10-10165-TJC |
| Maria N. Salazar | * | Chapter     13 |
| | * | |
| Debtors | * | |
| ************************************** | * | |
| Placido Salazar and | * | |
| Maria N. Salazar | * | |
| | * | |
| Plaintiffs | * | |
| vs. | * | Adversary   No. 10-00101 |
| First Residential Mortgage Services Corp., et al. | * | |
| | * | |
| Defendants | * | |

### <u>MEMORANDUM OF DECISION</u>

Placido and Maria Salazar ("Plaintiffs") bring this amended complaint asserting claims under the Truth in Lending Act, 15 U.S.C. §1601 ("TILA"), the Real Estate Settlements and Procedures Act, and various state laws arising from alleged misconduct and infirmities in connection with the 2006 refinance of the deed of trust loan on their residence.  Plaintiffs sue First Residential Mortgage Services Corporation, the mortgage originator ("First Residential"). As pertinent here, Plaintiffs also sue Wells Fargo Bank, NA, as Trustee for Certificate Holders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificates, Series 2007-AC2 ("Wells Fargo"), alleged to be the current holder of the note, and EMC Mortgage Corporation ("EMC"), alleged to be the current servicer of the loan.

Wells Fargo filed a motion to dismiss Count 1 (TILA Claims) and Counts 3 through 6 (Maryland Consumer Protection Act, Fraud, Misrepresentation and Civil Conspiracy).  EMC joins the motion to dismiss Counts 3 through 6.  For the reasons stated herein, the Court will dismiss Plaintiffs' TILA rescission and damages claims as time-barred, but will allow Plaintiffs to assert their TILA claims in defense by recoupment in their objection to the proof of claim filed in this case.  The Court also will dismiss Counts 3 through 6 against these defendants for failure to state a claim, without prejudice to Plaintiffs' right to amend the complaint one final time to attempt to assert valid claims.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O).

## SUMMARY OF FACTS AS ALLEGED IN THE COMPLAINT

On January 5, 2010, Plaintiffs filed for chapter 13 bankruptcy relief.  Plaintiff Placido Salazar emigrated from Bolivia and is a permanent resident of the United States.  He has worked

as a debris truck driver for E&J Services Inc. of Laurel, Maryland since 2005.  For the past four years, Plaintiff Maria Salazar has worked at St. Patrick's Church in Rockville, Maryland as a cook and a housekeeper.  They are not well educated and are unsophisticated in business and financial matters.

The Plaintiffs purchased real property located at 604 Eldrid Drive, Silver Spring, Maryland in October, 2005.  On November 20, 2006, Plaintiffs obtained a consumer refinance loan (the "Loan") secured by a deed of trust on the property.  Defendant First Residential is identified as the originating lender and is the payee on the note that evidences the Loan and the lender on the deed of trust.   EMC is the seller and master servicer of the Loan.  EMC is 100% owned by The Bear Stearns Companies LLC, which was the underwriter of the loan.

Neither Placido nor Maria speak or read English.  All of the Loan transaction documents signed by Plaintiffs are in English.

The Plaintiffs applied for the Loan with First Residential.  Victoria Zambrano, a loan officer for First Residential, handled the Loan transaction.  Zambrano also served as an interpreter between the Plaintiffs and First Residential throughout the refinance transaction.

The Loan was securitized as a "stated income, stated asset" loan and was underwritten based on Placido's credit score, the loan to value ratio, and the belief that value of residential real estate would increase.  Zambrano did not ask about Placido's income and informed Placido she only needed to check his credit report to qualify him for the loan.  Zambrano also did not request Placido's tax return, pay stubs, or any other evidence of his actual income.

Zambrano prepared the Loan application, and listed Placido's income to be $9,500 per month from self-employment fence construction and Maria's income as zero.  Zambrano obtained the income information for Placido by searching www.salary.com for the average

3

income of a person engaged in fence construction, rather than reporting Plaintiffs' actual income or occupation.  Zambrano did not tell the Plaintiffs that she falsified their income on the application and the Plaintiffs were not aware when they signed that the application incorrectly stated their income.

The settlement agent for the transaction was Defendant Excellente Settlements, Inc. ("Excellente"). However, the closing of the loan occurred after 5 p.m. at the office of Zambrano, located at 8757 Georgia Avenue, Suite 1320, Silver Spring, Maryland.  The HUD-1 inaccurately states that the closing took place at Excellente's office located at 401 N. Washington Street, Suite 950, Rockville, Maryland 20850.  The settlement agent rushed the Plaintiffs through the process of signing the settlement papers because he was running late and was pressed for time.

The Loan provided little or no economic benefit to the Plaintiffs, but the Plaintiffs paid $7,443 in closing costs.  The transaction decreased the Plaintiffs' debt service by only $61 per month.  Moreover, the interest rate on the existing first trust loan that was refinanced was a five year ARM, starting at 7.35%.  Had Plaintiffs not refinanced, the interest rate on the prior first trust loan today would be significantly lower than the 7.5% fixed rate on the Loan.

The deed of trust encumbering the Property was recorded on January 2, 2007.  First Residential assigned the deed of trust to Wells Fargo on October 28, 2009.  On October 29, 2009, Wells Fargo initiated a foreclosure action against Plaintiffs in the Circuit Court of Maryland for Montgomery County.

On November 19, 2009, Plaintiffs' counsel sent a notice of rescission (the "Notice of Rescission") to Defendants by facsimile, mail and certified mail.  The Notice of Rescission, which is attached to the complaint as Exhibit N, stated, among other things,  "I have been authorized by my clients to rescind this transaction and hereby exercise that right pursuant to the

Federal Truth in Lending Act, 15 U.S.C. §1635, Regulation Z §226.23." Exhibit N, Sec. Am. Compl.

A foreclosure sale was scheduled for January 6, 2010. Plaintiffs' bankruptcy petition stayed the foreclosure sale. Plaintiffs filed this adversary proceeding on February 17, 2010. Plaintiffs filed the second amended complaint (the "Amended Complaint") on August 2, 2010. The Amended Complaint is the subject of the motion to dismiss.

## CONCLUSIONS OF LAW

The motion is brought under Fed. R. Civ. P. 12 (b)(6), which applies in adversary proceedings pursuant to Fed. R. Bankr. P. 7012(b). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly* ("*Twombly*")*,* 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see also Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] of a few conclusory legal terms does not insulate a complaint from

5

dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the

necessary legal finding).

The Supreme Court summarized the *Twombly* standard in *Ashcroft v. Iqbal*, __ U.S. __;

129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*
> at 570. A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged.  *Id.* at 556.  The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully. *Ibid*.  Where a complaint pleads facts that
> are "merely consistent with" a defendant's liability, it "stops short of the line between
> possibility and plausibility of 'entitlement to relief.' " *Id.* at 557 (brackets
> omitted).

*Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*).  As further guidance, the Supreme Court noted

that the plausibility determination is "a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense."  *Id*. at 1937 (citation omitted).

**Plaintiffs' TILA claims for rescission are barred by §1635(f).**

The parties dispute whether the Plaintiffs' suit is barred by §1635(f), which, as pertinent

here, provides that "[a]n obligor's right of rescission shall expire three years after the date of

consummation of the transaction. . ." 15 U.S.C. §1635(f).[1]  The Loan transaction closed on

---

[1] 15 U.S.C. §1635(f) provides in its entirety:

(f) Time limit for exercise of right

An obligor's right of rescission shall expire three years after the date of consummation of the
transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact
that the information and forms required under this section or any other disclosures required
under this part have not been delivered to the obligor, except that if (1) any agency
empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the
provisions of this section within three years after the date of consummation of the
transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to
rescind is based in whole or in part on any matter involved in such proceeding, then the
obligor's right of rescission shall expire three years after the date of consummation of the

November 20, 2006. Plaintiffs contend they timely exercised their right of rescission by sending the Notice of Rescission on November 19, 2009. Wells Fargo[2] argues that Plaintiffs were required to file suit before the expiration of the three-year time period in §1635(f), and therefore Plaintiffs' suit is untimely.

TILA provides a three-day right of rescission for certain loan transactions where a borrower pledges a home as collateral. 15 U.S.C. §1635(a). Generally speaking, where the creditor fails to provide correct TILA disclosures, §1635(f) extends that period to three years from the date of consummation of the transaction, or other periods not relevant here. 15 U.S.C. §1635(a) and (f); *see also* 12 CFR §226.23(a)(3). For purposes of the motion, the parties do not dispute that the applicable rescission period in this case is the three-year period provided by §1635(f).

Thus as pertinent here, §1635(f) terminates the Plaintiffs' "right of rescission" upon the end of the three-year period. The issue, then, is what constitutes the exercise of the "right of rescission" in this case -- the Plaintiffs' issuance of the Notice of Rescission or the filing of the complaint.

This precise issue was recently addressed by the United States District Court for the District of Maryland in *DeCosta v. U.S. Bancorp*, 2010 WL 3824224 (D. Md. 2010), *appeal docketed*, No. 10-2212 (4th Cir. Oct. 28, 2010). There, Chief Judge Chasanow determined that,

---

transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

[2] EMC is not named as a defendant in Count 1 (TILA Violations) and therefore does not join the motion to dismiss that count.

7

where the borrowers mailed a rescission notice within the three year period but filed their lawsuit after the period ran, the borrowers' rescission suit was untimely under §1635(f). This Court adopts the rationale of *DeCosta* and concludes that the Plaintiffs' TILA claim for rescission is untimely.[3]

The Court recognizes, however, that the issue is not free from doubt. *See DeCosta,* 2010 WL 3824224, at *4 ("The issue of what constitutes a timely claim for rescission has perplexed courts and produced a variety of approaches."); *see also*, 12 C.F.R. §226.23(a)(2) (Requiring that "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication."); *Jones v. Saxon Mortgage Inc.*, 537 F.3d 320, 325 (4th Cir. 1998) (per curiam) ("[T]o exercise the right to rescind, a borrower must notify the creditor of the rescission by mail, telegram or other means of written communication.") Accordingly, the Court will dismiss the TILA rescission claim without prejudice subject to being reasserted as appropriate upon the Fourth Circuit's resolution of the *DeCosta* appeal.

**Plaintiffs' Affirmative Claims for Damages under TILA are Barred by §1640(e).**

Wells Fargo contends that Plaintiffs' claims for damages for violations of TILA are barred by §1640(e). This Court agrees.

As pertinent here, §1640(e) requires that actions for civil liability under §1640 must be brought within one year "from the date of the occurrence." 15 U.S.C. §1640(e).[4] Here, the Loan

---

[3] This determination also resolves Plaintiffs' claim that Wells Fargo is liable under TILA for failing to honor the notice of rescission.

[4] 15 U.S.C. §1640(e) provides in pertinent part:

       (e) Jurisdiction of courts; limitations on actions; State attorney general enforcement.

       Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of

closed on November 20, 2006, and Plaintiffs' claims for civil liability arise from the Loan transaction. Plaintiffs' initial complaint was filed on February 17, 2010, more than one year after the Loan closed. Accordingly, Plaintiffs' claims under §1640 are time-barred.

**Plaintiffs Can Assert Their TILA Damage Claims as Recoupment in Their Objection to Defendant's Proof of Claim**.

Plaintiffs contend that even if their affirmative TILA claims are time-barred by §1640, they nevertheless may assert the claims as a defense of recoupment or set-off in their objection to Wells Fargo's proof of claim included as Count 7 of the Amended Complaint. Specifically, Plaintiffs contend they can assert their TILA claims in recoupment to support their objection pursuant to the following provision of §1640(e):

> This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. §1640(e). Wells Fargo argues that, notwithstanding that Plaintiffs contend the TILA claims are being asserted as recoupment, the claims are really affirmative claims and are time-barred by §1640(e). For the reasons that follow, the Court will allow the Plaintiffs to assert their TILA claims in defense by recoupment in their objection to Wells Fargo's proof of claim.

---

the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a) of this title), 1 year from the date on which the first regular payment of principal is due under the loan. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

The Amended Complaint alleges that Wells Fargo scheduled a foreclosure sale for January 6, 2010, and that Plaintiffs filed their bankruptcy case to stay the foreclosure. It further alleges that Wells Fargo timely filed a proof of claim in the bankruptcy case asserting a secured claim in the amount of $382,820.09. Count 7 of the Amended Complaint objects to the proof of claim on two grounds. First, Plaintiffs contend that the Wells Fargo's claim is not secured because they exercised their rescission rights. This contention must fail to the extent the Plaintiffs' rescission claim fails. Second, Plaintiffs contend the proof of claim is overstated and excessive and should be reduced at least by their TILA claims. It is this contention that provides the basis for Plaintiffs' recoupment defense.

Recoupment is the "diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of the same transaction on which the adversary's claim is based." *Imbesi v Carpenter Realty Corp.*, 357 Md. 375, 380, 744 A.2d 549 (2000). In *Bull v. United States,* the Supreme Court recognized that "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." 295 U.S. 247, 262 (1935). The *Bull* decision has been interpreted as establishing a three part test to determine the viability of a recoupment claim:

> Thus, to maintain [a] claim for monetary damages under *Bull,* [the claimant] must show that (1) the TILA violation and the creditor's debt arose from the same transaction, (2) [the claimant] is asserting her claim as a *defense,* and (3) the "main action" is timely. All three requirements must be satisfied."

*Coxson v. Commonwealth Mortgage Company of America, L.P.* (*Matter of Coxson),* 43 F.3d 189, 193 (5th Cir. 1995) (quoting *Smith v. American Financial Systems, Inc. (In re Smith),* 737

F.2d 1549, 1533 (11th Cir. 1984)); *accord Wentz v. Saxon Mortgage (In re Wentz),* 393 B.R. 545, 555-57 (Bankr. S.D. Ohio 2008).

Here, there is no dispute that the TILA violation arose from the Loan transaction, which also serves as the basis for the proof of claim. It is equally clear that Wells Fargo filed the proof of claim timely in the bankruptcy case, and that Plaintiffs are asserting the objection as a defense to the proof of claim. Thus the three elements discussed in *Coxson* are met.

Further, the Court concludes that Wells Fargo's filing of a proof of claim, and Plaintiffs' objection to it, is "an action to collect a debt" within the meaning of §1640(e). Wells Fargo filed the proof of claim in order to be paid in the bankruptcy case. The Bankruptcy Rules provide an opportunity for any party in interest, and certainly the Plaintiffs as the debtors, to object to the claim in order to establish its amount for payment. *See* Fed. R. Bank. P. 3007(a) and (b). After a proof of claim and objection are filed, the matter goes forward as a contested matter until it is settled by the parties or the Court determines the amount of the claim for purposes of receiving distributions from the estate. The contested matter, then, is an "action to collect a debt."

Wells Fargo contends that the claim objection is not a defensive action because it is asserted in an adversary proceeding in which Plaintiffs seek affirmative relief. It is true that an objection to a proof of claim is often resolved through a separate contested matter, standing alone. But Fed. R. Bank. P. 3007(b) requires that if a demand for relief is sought in addition to the claim objection, the matter must be brought as an adversary proceeding.[5] Thus Plaintiffs were required to include the claim objection in the adversary proceeding because they seek other relief against Wells Fargo and other defendants. That procedural posture does not change the

---

[5] Fed. R. Bank. P. 3007(b) provides that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."

nature of the claim objection in Count 7, nor does the fact that Plaintiffs seek relief in addition to the diminution of the claim.

To be sure, Plaintiffs could have filed an objection to claim asserting their recoupment defense and a separate adversary proceeding seeking additional relief. But such duplicative proceedings are unnecessary in light of Rule 3007. Moreover, the Court routinely consolidates separate objections to claims with related adversary proceedings that involve interrelated issues concerning the same transaction. To deny Plaintiffs the defense of recoupment here would be to elevate form over substance.

The Fifth Circuit's decision in *Coxson* supports this view. There, the court allowed debtors to assert their TILA claims in defense by recoupment in their objection to the creditor's proof of claim. 43 F.3d at 194. The bankruptcy court entered an agreed order modifying the automatic stay and a few months later, the defendants sent the Coxsons a notice that the note was in default and the defendants moved to foreclose. The Coxsons filed an adversary proceeding and claimed that the loan documents violated TILA. The Fifth Circuit Court of Appeals found that the claims arose from the same underlying transaction, the contract for financing the plaintiffs' home. The Fifth Circuit further found that the Coxsons' actions were defensive because they were in response to the defendants' proof of claim. *Id.* (citing *In re Jones*, 122 B.R. 246, 249 (W.D. Pa. 1990)).

Finally, the cases relied on by Wells Fargo do not support their position. It cites to *Smith v. American Financial Systems, Inc. (In re Smith),* 737 F.2d 1549 (11th Cir. 1984) and *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176 (S.D. Tex. 2007) to support its assertion that Plaintiffs' reliance on *Coxson* is misplaced. Both cases are distinguishable from the instant case. *Smith* did not involve an objection to the creditors' proof of claim as is the case here.

*Smith* involved a Chapter 13 debtor who scheduled a debt owed to creditor as a disputed claim, contending that she was entitled to rescission and statutory damages under the TILA. The creditor counterclaimed for the amount of the debt, as to which the debtor was in default. Smith then counterclaimed seeking recoupment of money damages for violations of TILA from any judgment that might be awarded to the creditor on account of the debt. In affirming the district court's conclusion that the debtor could not recoup time-barred money damages from any judgment that might be awarded to the creditor on the debt, the 11th Circuit found that "it is neither necessary nor advisable, *in the circumstances of this case*, to decide whether a debtor generally may recoup such damages." *Smith*, 737 F.2d at 1551 (emphasis in original). The procedural posture of *Smith* exemplified the finding that Smith's suit was one for affirmative relief and not asserted as a defense. The creditor did not affirmatively assert its claim on the underlying obligation until the creditor was brought into court and it was at that point that the debtor attempted to assert the claim for recoupment as a counterclaim. "Because Smith's claim is not asserted as a defense to or denial of the creditor's claim, it cannot be classified as a recoupment." *Id.* at 1554. Here, Wells Fargo filed a proof of claim in the case and the Plaintiffs asserted their recoupment claim as a defense and objection to its claim.

Wells Fargo also relies on *Williams* to support its assertion that Plaintiffs' reliance on *Coxson* is misplaced. There, the borrower brought an action in state court against mortgage lenders asserting, *inter alia*, TILA violations. The action was subsequently removed to federal court. The plaintiff borrower in *Williams* argued that his suit was defensive because he filed his complaint in response to the lender defendants' foreclosure sale. *Williams*, 504 F. Supp.2d at 188. The court found that the complaint was not timely filed in response to the lenders' foreclosure efforts, was not raised defensively to reduce the amount of the lenders' claims and

thus did not meet the recoupment exception.  The plaintiff had previously filed for bankruptcy relief four times in response to notices of foreclosure filed by the lender defendants, but did not assert a claim under TILA until his use of bankruptcy to avoid foreclosure proved fruitless.

The *Williams* court, citing to *Coxson*, stated that "[t]he mere fact that the debtor is the plaintiff in a TILA case does not preclude a finding that the claim was raised defensively." *Williams*, 504 F. Supp.2d 176 at 188 (citing *Matter of Coxson,* 43 F.3d 189, 194 (5th Cir. 1995) (holding that plaintiff's actions were defensive because they were in response to the defendants' proof of claim filed in the bankruptcy court); *see also In re Jones*, 122 B.R. 246 (W.D. Pa. 1990) (holding that the recoupment claim was raised defensively in response to the creditor's foreclosure efforts); *In re Woolaghan*, 140 B.R. 377, 383 (Bankr. W.D. Pa. 1992) ("The right of a debtor in bankruptcy to invoke the doctrine of recoupment to reduce a secured proof of claim of a mortgage lender by the amount of statutory TILA damages has been recognized again and again in case law.")  However, unlike in *Coxson* and *Jones*, Mr. Williams waited until after the bankruptcy court allowed the foreclosure sale to occur before bringing his TILA claims.  Again, this is distinguishable from the facts here.  The Plaintiffs raise their recoupment claim in response to and in the form of an objection to Wells Fargo's proof of claim filed in the bankruptcy case.

Accordingly, the Court will allow the Plaintiffs to assert recoupment claims in their objection to Wells Fargo's proof of clam in Count 7.

### Plaintiffs have properly alleged TILA violations that are apparent on the face of the disclosure documents.

Wells Fargo points out, and the Plaintiffs do not dispute, that it is an assignee of the Loan, and therefore §1641(e) requires that the asserted TILA violation must be apparent on the

14

face of the disclosure document for it to be liable for TILA damages. Wells Fargo contends that the violations are not apparent on the face of the documents, and therefore the Amended Complaint should be dismissed.  Plaintiffs argue that, at this stage of the proceedings, they are only required to allege properly that the violations are apparent on the face of the disclosure document, and that they have done so. They further contend that the violations are, in fact, apparent on the face of the disclosure document.  The Court will address the question of whether the alleged TILA violations are apparent on the face of the document in connection with a review of the alleged TILA violations as asserted by the Plaintiffs.

The Plaintiffs first allege that the Notice of Right to Cancel (the "Notice") contained an incorrect closing date and thus did not clearly and conspicuously disclose the date the rescission period expired.  Specifically, Plaintiffs contend that First Residential violated TILA by providing them with a Notice that stated the transaction date was October 27, 2006, rather than the correct date of November 20, 2006. Exhibit F, Sec. Am. Compl.  Plaintiffs contend the incorrect date violated 15 USC § 1635(a) and 12 CFR § 226.23(b) because the Notice was defective and not clear and conspicuous as required by the statute.  However, it is not disputed that the "How to Cancel" section of the Notice contains the accurate disclosures.

This allegation fails to state a claim.  In considering a claim of assignee liability, the relevant inquiry is whether "a reasonable person can spot [any violations] on the face of the disclosure statement or other assigned documents." *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998).  At this state in the proceedings, the appropriate inquiry is whether it is "plausible" that a reasonable person could conclude that the disclosure statement contained a violation on its face. *Twombly*, 550 U.S. at 570.  For the following reasons, the Court concludes that the Plaintiffs' claim is not plausible.

15

Although the Notice contains the incorrect transaction date, it clearly states that the borrower has three business days "from whichever of the following events occurs last: 1. the date of the transaction, which is OCTOBER 27, 2006; or 2. the date you receive your Truth in Lending disclosures; or 3. the date you receive this notice of your right to cancel."  Exhibit F, Sec. Am. Compl.  The Debtors acknowledge receiving the Truth in Lending disclosures and the Notice on November 20, 2006, the date of the transaction.  Exhibit F, Sec. Am. Compl.  Since November 20, 2006 obviously is later than October 27, 2006, the plain language of the Notice provides that the Plaintiffs' rescission period expired no earlier than three business days after November 20, 2006.  Further, the Notice also expressly provides: "If you cancel by mail or telegram, you must send the notice no later than midnight of NOVEMBER 27, 2006 (or midnight of the third business day following the latest of the three events listed above)." Exhibit F, Sec. Am. Compl.  12 CFR § 226.23(b) provides that "[t]he notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following…(v) The date the rescission period expires."   Under an objective standard, it is clear from a plain reading of the Notice that the rescission period expires on November 27, 2006. Accordingly, the Court will grant the motion to dismiss as it applies to this TILA allegation.

The Plaintiffs also contend that the finance charges and APR listed on the TILA disclosure statement (the "Disclosure Statement") were inaccurate as a result of "hidden bogus charges" and miscalculations. Sec. Am. Compl. ¶ 35.  More specifically, the Plaintiffs assert that

- the Disclosure Statement under-discloses the finance charge in violation of 15 USC §1638(a)(3) and 12 CFR §226.18(d) by failing to include in the finance charge certain charges imposed by First Residential and payable by Plaintiffs incident to the extension of credit as required by 15 USC §1605 and 12 CFR §226.4;

- First Horizon improperly included certain charges in the amount financed and thus improperly disclosed the amount financed in violation of 15 USC §1638(a)(2) and 12 CFR §226.18(b); and

- First Residential calculated the APR based upon improperly calculated and disclosed finance charges thus the disclosed APR was understated in violation of 15 USC §1638(a)(4) and 12 CFR §226.18(c).

The Defendants assert that a "reasonable person" would not be able to spot the alleged violations on the face of the Disclosure Statement or other assigned documents.

These allegations state a claim under TILA.   Section 1641(e)(1) provides that an action may be maintained against an assignee only if "(A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter…." 15 USC §1641(e)(1).   Pursuant to §1641(e)(2), a violation is apparent on the face of the disclosure statement if "the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or *any other disclosure of disbursement*…" *Id.* at §1641(e)(2) (emphasis added). The disbursement statement attached as Exhibit D to the Second Amended Complaint is a "disclosure of disbursement" as contemplated by §1641(e)(2). When the disbursement statement is compared to the Disclosure Statement (Exhibit G) and the HUD-1 (Exhibit C), it is apparent that the cash out amount disbursed to Placido Salazar is less than that disclosed on the HUD-1.   Accordingly, the Court will deny the motion to dismiss as it applies to this TILA allegation.

### Count 3 through 6 must be dismissed against Wells Fargo and EMC.

In Counts 3 through 6, Plaintiffs bring claims against all defendants under the Maryland Consumer Protection Act, for fraud and for misrepresentation.   These claims are based on alleged misconduct that occurred at the time the Loan was made, in November 2006.   The

17

Amended Complaint alleges, however, that Wells Fargo acquired the Loan after it was made, and therefore after the alleged misconduct occurred.  As such, the claims against Wells Fargo and EMC must be dismissed unless the Amended Complaint asserts some plausible basis for imposing liability on it.

Insofar as Wells Fargo and EMC are concerned the Amended Complaint asserts the following:

> EMC is identified as the Seller, Master Servicer, and the Company in the Pooling and Servicing Agreement[1] (PSA) which governs the subject Trust, dated as of February 1, 2007 and filed with the Securities and Exchange Commission (SEC).
>
> [1]A true and correct copy of the PSA can be found on the SEC's web site at: http://www.sec.gov/Archives/edgar/data/1388968/000088237707000985/d642573_ex4-1.htm
>
> The roles played by Defendants Wells Fargo (Trustee and Custodian) and EMC (Sponsor and Master Servicer) in the securitization process for the subject loan is set forth in the Transaction Structure diagram found on page 15 of the Prospectus Supplement filed February 27, 2007 with the SEC.[2] EMC is 100% owned by The Bear Stearns Companies LLC, a Delaware LLC.  The Bear Stearns Companies LLC is 100% owned by JPMorgan Chase & Co.  The Bear Stearns & Company, Inc. was the underwriter.
>
> [2] A true and correct copy of the Prospectus Supplement can be found on the SEC's web site at
> http://www.sec.gov/Archives/edgar/data/1388968/000088237707000503/d637429_424b5.htm
>
> ******
>
> Wells Fargo knew or should have known that First Residential was regularly falsifying the income stated on loans it sold to Wells Fargo, since this was a loan sold into a securitized trust designed and sponsored by The Bear Stearns Companies ("Bear Stearns") that is rife with such stated income fraud, and it is common knowledge that there was a pervasive industry pattern and practice of such stated income fraud in the origination of subprime mortgage loans like Plaintiffs' loan. *See, e.g.,* FIRST CONSOLIDATED AMENDED SECURITIES CLASS ACTION

18

COMPLAINT,[3] ¶¶ 10-13, *New Jersey Carpenters Health Fund v. Bear Stearns Mortgage Funding Trust*, 1:08-cv-08093-LTS, United States District Court Southern District of New York; CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS,[4] 1, ¶¶ 53-60, *IN RE BEAR STEARNS COMPANIES ERISA LITIGATION*, Master File No.: 08 MDL No. 1963 (RWS), United States District Court Southern District of New York.  Defendants knew or should have known that Plaintiffs would rely on First Residential's approval of Plaintiffs' loan application as proof they could afford the subject loan. Wells Fargo was instrumental in providing the funding that enabled First Residential to deceive Plaintiffs into believing they could afford the subject loan.

> [3] A copy can be downloaded from the court at https://ecf.nysd.uscourts.gov/doc1/12706341165. A true bookmarked copy can be downloaded from Plaintiffs' counsel at http://web3.customwebexpress.com/haegerlaw/UserFiles/File/First%20Am%20Class%20Action%20Complaint.pdf
>
> [4] A copy can be downloaded from the court at https://ecf.nysd.uscourts.gov/doc1/12706161876; a true bookmarked copy can be downloaded from Plaintiffs' counsel at http://web3.customwebexpress.com/haegerlaw/UserFiles/File/CONSOLIDATED%20CLASS%20ACTION%20COMPLAINT.pdf

Amended Complaint at ¶¶7, 8b and 54B.  Thus Plaintiffs contend that Wells Fargo and EMC "knew or should have known" that First Residential "was regularly falsifying the income stated on loans" for two reasons.  First, Plaintiffs contend that the Loan was sold into a securitized trust that "is rife" with such problems.  But this allegation concerning the current status of the loans in the trust does not plausibly provide a basis for establishing that defendants knew or should have known of the misconduct at the time the Loan was made.  Second, Plaintiffs contend that it is "common knowledge" of "pervasive misconduct" in the industry.  But assuming that "common knowledge" can provide the basis for allegations in a complaint, again the complaint suffers from the temporal deficiency that the Plaintiffs seek to assert liability against parties for actions that occurred in 2006 based on what is allegedly common knowledge today.

Finally, the Court notes that the internet materials cited by Plaintiffs consist of over 200 pages of pleadings that have little, if anything, to do with the origination of the Loan.  It is not for the Court or the defendants to peruse internet materials to understand the factual allegations supporting claims in a complaint.  Fed. R. Civ. P. 8(a) requires a complaint to contain a short, plain statement of the claim showing the plaintiff is entitled to relief.  Fed. R. Civ. P. 9(b) requires that the circumstances constituting fraud must be stated with particularity.  The parties should not have to resort to voluminous internet materials to gain an understanding of the factual allegations supporting claims in a complaint.

Accordingly, the Court will dismiss Counts 3 through 6 against Wells Fargo and EMC without prejudice to Plaintiffs amending the complaint within 14 days.

## CONCLUSION

For the foregoing reasons the Court will enter an order (1) granting the motion to dismiss Count 1 to the extent the Amended Complaint seeks a claim under TILA for rescission or an affirmative claim for damages; (2) denying the motion to dismiss Count 1 to the extent the Amended Complaint seeks to assert TILA violations as a defense of recoupment to the Wells Fargo proof of claim; (3) granting the motion to dismiss Count 1 to the extent the Amended Complaint asserts that the Notice contained a TILA violation that is apparent on its face; and is denied to the extent the Amended Complaint contends that other alleged TILA violations are apparent on the face of the disclosure documents; and (4) granting the motion to dismiss Counts 3 through 6 against defendants Wells Fargo and EMC without prejudice to Plaintiffs' right to amend the complaint within fourteen days.

cc:     Plaintiffs

        Plaintiffs' Counsel

Defendants

Defendants' Counsel

## END OF MEMORANDUM